TRACY RACICOT HUCKE, Wyoming Bar No. 7-4880
Wyoming Branch Chief
214 W. Lincolnway Ste. 31A
Cheyenne WY 82001
307-772-2781
Tracy.Hucke@fd.org

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>STEVEN SHOBERT,<br><br>    Defendant. | CASE NO. 23-CR-153-SWS |

## MOTION TO DISMISS COUNT TWO

Steven Shobert moves to dismiss Count Two of the indictment because 26 U.S.C. § 5861 is unconstitutional under the Second Amendment and *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022).

### A. Factual and Legal Background.

Count Two arises under 26 U.S.C. § 5861(d), which imposes criminal penalties on anyone who possesses a short-barreled rifle without complying with the National Firearm Act's taxation and registration requirements.

As discussed in his corresponding motion to dismiss Count One, in *Bruen* the Supreme Court held that the rights guaranteed by the Second Amendment are not subject to any interest balancing or means-ends scrutiny, explaining that "when the

Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. *Bruen*, 142 S. Ct. at 2125-26. To then justify regulating protected conduct, "the government may not simply posit that the regulation promotes an important interest." *Id.* at 2126. "Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127. The government cannot meet that burden with respect to § 5861.

The National Firearms Act, at 26 U.S.C. § 5861(d), dates only to the early twentieth century. It was first enacted in 1934 and imposes stiff criminal penalties on anyone who receives or possesses a short-barreled rifle that is not registered in the National Firearms Registration and Transfer Record. National Firearms Act of 1934, Pub. L. No. 730474, 48 Stat. 1236-1240. The first version of the statute was upheld as a valid exercise of Congress's authority to tax. *See Sonzinsky v. United States*, 300 U.S. 506, 514 (1937) ("since it operates as a tax, it is within the national taxing power"). Despite purporting to regulate firearms associated with criminal activity, the Act in fact covers arms that have been, and remain, in common use. *See* Elliott Buckman, *Just a Soul Whose Intentions are Good? The Relevance of a Defendant's Subjective Intent in Defining A "Destructive Device" Under the National Firearms Act*, 79 Fordham L. Rev. 563, 570-71 (2010) (explaining that the National Firearms Act regulated arms "that had gained reputations as gangster weapons" and has been characterized as "a symbolic denunciation of firearms in the hands of criminals.") (citation omitted) *and* Bureau Alcohol, Tobacco, Firearms, and

Explosives, *Firearms Commerce in the United States: Annual Statistical Update 2021*, at 16 (2021) (listing total short-barreled rifles registered at 532,725 as of May 2021). Moreover, the Act imposes these heightened restrictions and penalties on short-barreled rifles, even though they "have no discernable operational differences from firearms excluded from the Act," such as pistols and other handguns, weapons which are, incidentally, indisputably protected by the Second Amendment. *See* James A. D'Cruz, Note, *Half-Cocked: The Regulatory Framework of Short-Barrel Firearms*, 40 Harv. J.L. & Pub. Pol'y 493, 496 (2017); *see Bruen*, 142 S. Ct. at 2122 ("[T]he Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home.").

Put simply, the statute is a twentieth century innovation that burdens constitutionally protected conduct. Regulations did not exist during the founding era that taxed or registered short-barreled arms, nor do such regulations have a historical analogue. The government therefore cannot meet its burden to prove such criminal statutes are consistent with the Nation's historical tradition of firearms regulation under *Bruen*, and the indictment, therefore, must be dismissed.

### B. The possession of short-barrel rifles is conduct falling within the plain textual language of the Second Amendment.

The first step of the *Bruen* analysis requires determining whether "the Second Amendment's plain text covers an individual's conduct." 142 S. Ct. at 2129-30. When it does, "the Constitution presumptively protects that conduct." *Id.* This is true here.

3

For one thing, the Second Amendment protects the right of the people to "keep and bear arms." The core conduct restricted by § 5861, mere possession of a firearm, easily qualifies as "keep[ing]" and "bear[ing]" arms. *See District of Columbia v. Heller*, 554 U.S. 570, 595, 628-29 (2008) (holding statute that barred possession of handguns in the home unconstitutional). The statute applies to everyone, necessarily impacting "the right of the people." Because the Second Amendment's plain text covers the conduct at issue, the Constitution presumptively protects that conduct.

This is so notwithstanding the Tenth Circuit's pre-*Bruen* decision in *United States v. Cox*, which held that short-barreled rifles fell outside the "arms" protected by the Second Amendment because of their similarity to short-barrel shotguns, which the Supreme Court in 1939 concluded fell outside the Amendment's protections. 906 F.3d 1170 (10th Cir. 2018) (citing *United States v. Miller*, 307 U.S. 174, 178-79 (1937)). But *Cox* does not control here for two reasons.

First, *Cox* predates *Bruen*, and the latter case makes clear that deeper historical inquires than rote comparison between two different weapons is required when assessing the scope of the Second Amendment. Moreover, *Cox* relies on dicta from *Heller*, *id.* at 1184-86, which in turn looked to the Supreme Court's 1939 *Miller* decision, which had held simply that short barrel *shotguns* fell outside the Second Amendment's protections. *See Heller*, 554 U.S. at 627 (indicating that "the historical tradition of prohibiting the carrying of dangerous and unusual weapons" supported limiting the Second Amendment's protection to weapons "in common use

at the time" of ratification and that "those weapons not typically possessed by law-abiding citizens for lawful purposes" fall outside the scope of the amendment) (quoting *United States v. Miller*, 307 U.S. 174, 179 (1939)). But *Heller* also cautioned that "[i]t is particularly wrongheaded to read *Miller* for more than what it said, because the case did not even purport to be a thorough examination of the Second Amendment." 554 U.S. at 621. And *Miller* says nothing about regulation of short-barreled rifles; it concerned short-barreled shotguns, a different type of weapon than is at issue here. Put simply, pre-*Bruen* dicta from *Heller* discussing *Miller*'s limited assessment of a different weapon should not control the outcome here.

  Second, *Cox* is inapposite even on its own terms. That's because the case expressly cabined its holding to the minimal record developed there. Specifically, the court evoked *Miller*'s conclusion that short-barrel shotguns were not protected by the Second Amendment, and then explained that, importantly, the *Cox* defendant "offered no meaningful distinction between" short-barrel shotguns and short-barrel rifles. *See* 906 F.3d at 1186. In doing so, it expressly left open the possibility that a different case, with a different showing as to why short-barreled rifles fall under the Second Amendment, may come out different. ("We need not opine on whether a sufficient factual record could be developed to distinguish short-barreled rifles from short-barreled shotguns. On the record and argument before us, we take our cue from *Heller* and conclude that the possession of short-barreled rifles falls outside the Second Amendment's guarantee.").

In contrast to *Cox,* Mr. Shobert can make that showing here. Short-barreled arms were common during the founding era and remain common today. Indeed, while *regulation* of short-barreled firearms is relatively new, dating only to the passage of the National Firearms Act in 1934, the *existence* of short-barreled weapons is not. *See* D'Cruz, *Half-Cocked,* 40 Harv. J.L. & Pub. Pol'y at 508 ("Short-barrel firearms, unlike modern 'assault weapons,' did exist at the time of the Second Amendment's drafting and ratification."). For example, various versions of the blunderbuss, firearms "boasting very short barrels, were popular for self-defense and occasionally used by militaries." *Id.* at 503.[1] Similarly, short-barreled rifles remain popular today, despite being heavily regulated under the NFA for nearly a century; as of 2021, over half a million short-barreled rifles are currently registered under the National Firearms Act. *See* Bureau Alcohol, Tobacco, Firearms, and Explosives, *Firearms Commerce in the United States: Annual Statistical Update 2021*, at 16 (2021) (listing total short-barreled rifles registered at 532,725 as of May 2021). Moreover, such weapons are no more dangerous or unusual than the

---

[1] For example, The Royal Armouries collection contains several examples of blunderbusses with barrels under 15 inches. *See, e.g.*, Royal Armouries Collections, *Flintlock muzzle-loading blunderbuss – By Wheeler* (about 1795), *available at* https://royalarmouries.org/collection/object/object-30588; *Flintlock muzzle-loading blunderbuss – By James Barbar* (dated 1755), *available at* https://royalarmouries.org/collection/object/object-15012. Similarly, the American Revolution Institute has an eighteenth-century blunderbuss in its collection, "a type that was carried by British troops during the American Revolution," with "a short, large-caliber barrel just shy of fifteen inches." *See* The American Revolution Institute, Blunderbuss, the "Thunder Box" of the Battlefield, https://www.americanrevolutioninstitute.org/recent-acquisitions/english-blunderbuss.

handguns protected by *Bruen* and *Heller*. *See, e.g.*, Stephen P. Halbrook, Firearms Law Deskbook § 8:10 (2021) (noting that in comparison to a short rifle, a handgun is a "far more concealable arm also with a barrel with a rifled bore").

Accordingly, even under *Cox*'s view that *Heller*'s reading of *Miller* controls the inquiry of whether a firearm is covered by the Second Amendment, a short-barreled rifle plainly falls under that definition. *See Cox*, 906 F.3d at 1184-86 (recounting and relying on *Heller* and *Miller* in concluding that "'those weapons not typically possessed by law-abiding citizens for lawful purposes'—short-barreled shotguns, for instance—fall outside the scope of the amendment").

### C. Regulating short-barreled rifles burdens rights protected by the Second Amendment and has no historical basis.

Even though the National Firearms Act does not outright *ban* short-barreled rifles, it imposes unconstitutional burdens on the exercise of the right to possess those firearms. The registration requirements, for example, can entail "wait times of several months to a year." *See* D'Cruz, *Half-Cocked* at 511. And the Supreme Court has made clear that the Constitution prohibits the government from imposing even *de minimis* burdens on fundamental rights. As the Supreme Court has observed, the power to single out certain conduct for taxation "gives a government a powerful weapon against the taxpayer selected." *Minneapolis Star & Trib. Co. v. Minnesota Com'r of Revenue*, 460 U.S. 575, 585, 592–93 (1983) (striking down "ink and paper tax" because a "tax that singles out the press, or that targets individual publications within the press, places a heavy burden on the State to justify its action"); *see also Crawford v. Marion C'nty. Election Bd.*, 553 U.S. 181, 191 (2008)

7

("However slight that burden may appear . . . it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation.) (internal quotations omitted). Indeed, *Bruen* itself did not involve an outright ban, but a licensing scheme that required an application to demonstrate a special need for self-defense in order to carry handguns publicly. 142 S. Ct. at 2122

Accordingly, like other regulations that burden constitutional rights, the restrictions on owning short-barreled firearms must pass *Bruen*'s historical test. And under that test, the question for the Court is whether the government can "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." It will be unable to do so here because § 5861, a 20th century legislative restriction, is not part of this Nation's history and tradition. The purported problems posed by short-barreled firearms have existed since the 18th century, and therefore under *Bruen*, "the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." 142 S. Ct. at 2131. The inquiry is, in fact, "fairly straightforward," *id.*, and accordingly the statute is unconstitutional.

### D. Conclusion

For these reasons, § 5861 imposes unconstitutional restrictions on the Second Amendment Right to keep and bear arms, and, therefore, Count Two must be dismissed.

DATED this 20th day of February 2024.

                        Respectfully submitted,

                        VIRGINIA L. GRADY
                        Federal Public Defender

                        */s/Tracy Racicot Hucke*
                        TRACY RACICOT HUCKE
                        Assistant Federal Public Defender

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2024 the foregoing was electronically filed and consequently served on counsel of record.

*/s/ Tracy Racicot Hucke*
Tracy Racicot Hucke
