Jonathan C. Coppom
Wyoming State Bar No. 7-5548
Assistant United States Attorney
District of Wyoming
P.O. Box 668
Cheyenne, WY 82003
(307) 772-2124
jonathan.coppom@usdoj.gov

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | |
| **v.** | **Criminal No. 23-CR-153-S** |
| **STEVEN SHOBERT,** | |
| Defendant. | |

## RESPONSE TO MOTION TO DISMISS COUNT II (ECF No. 29)

The United States, through Assistant United States Attorney Jonathan C. Coppom, submits its response opposing Steven Shobert's Motion to Dismiss Count Two (Motion).

## I.    Introduction

This is a possession of machines gun devices and a short-barreled rifle case. (ECF No. 1.) After being found in possession of a short-barreled rifle, the grand jury charged Shobert with possessing this prohibited weapon in violation of 26 U.S.C. §§ 5861(d) and 5845(a). (*Id.*) Shobert now asserts the prohibition against possessing unregistered short-barreled rifles is unconstitutional under the Second Amendment after *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). Because *Bruen* did not alter Supreme Court precedent repeatedly holding that

prohibitions against possessing dangerous and unusual weapons constitutional, this Court should deny his Motion.

## II.     Section 5861(d) is Constitutional under *Bruen*'s Test.

Courts employ a two-part test after *Bruen* to determine if a regulation is constitutional. *Bruen*, 597 U.S. at 17. First, courts must determine if the conduct regulated implicates the Second Amendment.[1] *Id.* Second, assuming it does, "[t]he government must then justify its regulation by demonstrating that it is consistent with this Nation's historical tradition of firearm regulation." *Id.* Section 5861(d) implicates conduct falling outside the Second Amendment's protections. But even if this Court concluded otherwise, § 5861(d) remains constitutional.

### a.     Supreme Court Precedent Shows that § 5861(d) Does Not Implicate the Second Amendment.

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend II. The Supreme Court, however, has repeatedly affirmed that the Second Amendment does not provide an unlimited right. *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008); *see also Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring, joined by Roberts, C.J.) (quoting *Heller* and reasserting the Second Amendment does not provide a right to "dangerous and unusual" weapons).

The Supreme Court first addressed permissible regulations on types of weapons potentially implicating the Second Amendment in *United States v. Miller*, 307 U.S. 174 (1939). There, the Court evaluated the National Firearms Act's registration requirement for short-barreled shotguns. *Id.* at 178. The Court explained that in the founding era, men engaged in militia service "were

---

[1] Arguably, the evaluation of whether a weapon is "dangerous and unusual" is implicated in either prong of the test. Because the Supreme Court has held that dangerous and unusual weapons do not implicate the Second Amendment, and because there was a historical tradition of banning such weapons, the nature of a weapon could fail both prongs.

expected to appear bearing arms supplied by themselves and of the kind in common use at the time." *Id.* at 179. The Court found the NFA's registration requirement for short-barreled shotguns was constitutional, reasoning that "[i]n the absence of any evidence tending to show that possession or use of a 'shotgun having a barrel of less than eighteen inches in length' at this time has some reasonable relationship to the preservation or efficiency of a well regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument." *Id.* at 178. The Court would emphasize the Second Amendment's protection of common weapons, not dangerous and unusual weapons, in later precedent. *Heller*, 554 U.S. at 595.

In *Heller*, the Court explained the significance of its holding in *Miller*. *Heller* rejected a reading of *Miller* that the Second Amendment protected weapons "useful in warfare," noting that this reading would lead to the "startling" result that "the National Firearms Act's restrictions on machineguns (not challenged in *Miller*) might be unconstitutional, machineguns being useful in warfare in 1939." *Heller*, 554 U.S. at 624. *Heller* explained that "*Miller* stands . . . for the proposition that the Second Amendment right, whatever its nature, extends only to certain types of weapons." *Id.* at 623. Specifically, the Second Amendment protects "arms 'in common use at the time' for lawful purposes like self-defense," *id.* at 624 (quoting *Miller*, 307 U.S. at 179), a "limitation . . . fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons," *id.* at 627 (quoting William Blackstone, 4 Commentaries on the Laws of England 1 48–49 (1769)).

The *Heller* Court considered the potential objection to its reasoning "that if weapons that are most useful in military service—M-16 rifles and the like—may be banned, then the Second Amendment right is completely detached from the prefatory clause" concerning the necessity of a well-regulated militia. *Id.* But the Court rebuffed this objection, explaining that "the conception of

the militia at the time of the Second Amendment's ratification was the body of all citizens capable of military service, who would bring the sorts of lawful weapons that they possessed at home to militia duty." *Id.* Thus, the Court found it implicit and obvious that under its reading of the Second Amendment, "M-16 rifles and the like . . . may be banned[.]" *Id.* As the Fifth Circuit noted, "*Heller* took it as a given that [machineguns] are dangerous and unusual weapons and not protected by the Second Amendment." *Hollis v. Lynch*, 827 F.3d 436, 446 (5th Cir. 2016); *see also DeWilde*, 2023 WL 4884582, at *6 ("This Court therefore reaches the same conclusion—there is no Second Amendment right to possess a machinegun.")

Regarding short-barreled rifles, multiple courts have held they remain unusual and dangerous weapons. *E.g.*, *United States v. Miller*, Case No. 3:23-CR-0041-S, 2023 WL 6300581, at *3 (N.D. Tex. Sept. 27, 2023); *see also United States v. Shepherd*, Case No. 3:23-CR-39-CWR-LGI, 2024 WL 71724, at *5 (S.D. Miss. Jan. 5, 2024) (opining short-barreled weapons are not in common use and registration requirements do not infringe on Second Amendment rights).

*Bruen* did not abrogate or overrule any of this precedent.

In *Bruen*, the Court was confronted with a "may issue" licensing law that prevented some people from possessing firearms. 597 U.S. at 12–13. It did not evaluate whether the Second Amendment provided a right to possess short-barreled rifles. Moreover, *Bruen* embraced—rather than abrogated—the logic of *Heller*, stating its articulation of the governing standard was "[i]n keeping with *Heller*." *Id.* at 17. It noted that "respondents can show that colonial legislatures sometimes prohibited the carrying of 'dangerous and unusual weapons'—a fact [it] already acknowledged in *Heller*." *Id.* at 47 (citing *Heller*, 554 U.S. at 627). Thus, the Court acknowledged a continuing right for states and the federal government to prevent access to "dangerous and unusual weapons." *Id.*

Justice Kavanaugh authored a concurrence joined by Chief Justice Roberts, who also recognized "[W]e recognize another important limitation on the right to keep and carry arms. *Miller* said, as we have explained, that the sorts of weapons protected were those in common use at the time. We think that limitation is fairly supported by the historical tradition of prohibiting the carrying of dangerous and unusual weapons." *Id.* at 81 (quoting *Heller*, 554 U.S. at 626–27). Notably, both justices' votes were needed to form the majority in *Bruen. Id.* at 7.

Here, *Bruen* has not altered the Supreme Court's precedent that dangerous and unusual weapons are not covered by the Second Amendment. To the contrary, *Bruen* offered reassurances that people may continue to be prohibited from possessing dangerous and unusual weapons. Such conduct, as *Heller* concluded, is not conduct protected by the Second Amendment. Thus, it fails the first part of *Bruen*'s test. And notably, the Supreme Court has previously curtly dismissed—as it did in *Miller*—the idea that all weapons that exist may be possessed by the normal populace as "startling." *See Heller*, 554 U.S. at 624. Shobert attempts to circumvent this reality by making his own startling argument that "short-barreled rifles remain popular today, despite being heavily regulated under the NFA for nearly have a century." (Def's. Mot. at 6.) He argues there are "over half a million short-barreled rifles . . . currently registered under the National Firearms Act." (*Id.*) Like his previous motion, (ECF No. 29), he fails to put any of these numbers into context.

The population of the United States Is 334,914,895.[2] Assuming an even distribution of 500,000 short-barreled rifles, this means that 0.149% of the American population would own such a weapon. "Scarce" or "rare" or "nearly non-existent among the population" are all terms that better apply to such an incidence of ownership than "common." But even more damaging to

---

[2] QuickFacts, United States Census, *available at* https://www.census.gov/quickfacts/fact/table/US/PST045223 (providing population estimate as of July 1, 2023) (last visited Feb. 27, 2024).

Shobert's argument is that registered short-barreled rifles are *not* distributed evenly among the civilian population; under the National Firearms Act, "[t]he Secretary shall maintain a central registry of all firearms in the United States which are not in the possession or under the control of the *United States*." 28 U.S.C. § 5841 (emphasis added). This includes "those possessed by states and political subdivisions (e.g., police departments)."[3] In this light, civilian ownership of short-barreled rifles is likely less than 0.149%, with some such firearms residing with state law enforcement agencies. And because short-barreled rifles remain dangerous and unusual weapons, the Second Amendment is not implicated by the law.

Therefore, because § 5861(d) does not proscribe conduct implicated by the Second Amendment, the government is not required to demonstrate it comports with America's traditions. But if this Court concludes otherwise, § 5861(d) remains constitutional post-*Bruen*.

**b.  Section 5861(d) is Consistent with American Historical Tradition.**

The second step of *Bruen*'s test requires courts to consider whether, if the Second Amendment is implicated by a regulation, the regulation "is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17.  As previously discussed, *Bruen* did not abrogate *Heller*—it emphasized and broadened *Heller*'s approach towards evaluating firearm regulation. *E.g.*, *id.* at 19–20. *Heller* largely settled the question of historical tradition, holding that a "historical tradition" exists of "prohibiting the carrying of dangerous and unusual weapons," which "fairly support[s]" limiting the Second Amendment's protection to "the sorts of weapons . . . In common use at the time." 554 U.S. at 627 (quotations omitted). In support of Its conclusion about historical tradition, *Heller* cited the following authorities:

---

[3] *See* Summary of State and Federal Machine Gun Laws, Veronica Rose & Meghan Reilly, *available at https://www.cga.ct.gov/2009/rpt/2009-R-0020.htm#:~:text=National%20Firearms%20Act,-With%20limited%20exceptions&text=The%20NFA%20also%20required%20all,(28%20USC%20%C2%A7%205841)* (Jan. 12, 2009) (citing 28 U.S.C. § 5841) (last visited Feb. 27, 2024).

> *See* 4 Blackstone 148-149 (1769); 3 B. Wilson, Works of the Honourable James
> Wilson 79 (1804); J. Dunlap, The New–York Justice 8 (1815); C. Humphreys, A
> Compendium of the Common Law in Force in Kentucky 482 (1822); 1 W. Russell,
> A Treatise on Crimes and Indictable Misdemeanors 271–272 (1831); H. Stephen,
> Summary of the Criminal Law 48 (1840); E. Lewis, An Abridgment of the Criminal
> Law of the United States 64 (1847); F. Wharton, A Treatise on the Criminal Law of
> the United States 726 (1852). *See also State v. Langford,* 10 N.C. 381, 383–384
> (1824); *O'Neill v. State,* 16 Ala. 65, 67 (1849); *English v. State,* 35 Tex. 473, 476
> (1871); *State v. Lanier,* 71 N.C. 288, 289 (1874).

*Heller*, 554 U.S. at 627. *Bruen* acknowledged that *Heller* "found it 'fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" 597 U.S. at 21. Justice Scalia, writing for the majority, opined that the Court "recognize[d] another important limitation on the write to keep and carry arms." *Heller*, 554 U.S. at 627. This limitation was "fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Id.*

The Court, anticipating arguments that modern military weapons were required, rejected those arguments. *Id.* ("But the fact that modern developments have limited the degree of fit between the prefatory clause and the protected right cannot change our interpretation of the right."). Put simply, Supreme Court precedent holds that it is consistent with America's history of firearm regulation to prohibit the possession of weapons like short-barreled rifles. See, *e.g.*, *DeWilde*, 2023 WL 4884582, at *7.

Here, short-barreled rifles are dangerous and unusual weapons. The Supreme Court has acknowledged a historical tradition of prohibiting the possession of such weapons. Therefore, assuming this Court even makes it to the second step of *Bruen*'s test, § 5861(d) remains constitutional because it prohibits the possession of a dangerous and unusual weapons that are barely present among the American population. *See supra* at 5-6 (documenting the low incidence of short-barrel rifle ownership in America). Therefore, this Court should deny Shobert's Motion.

**III.     Conclusion.**

This Court should deny Shobert's Motion. Section 5861(d) neither implicates protected Second Amendment rights nor, even if it did, is inconsistent with this Nation's tradition of firearm regulation. Shobert's Motion must fail as a result.

Respectfully submitted this 8th day of March 2024.

NICHOLAS VASSALLO
United States Attorney


By:      _/s/ Jonathan C. Coppom_
JONATHAN C. COPPOM
Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

This is to certify that on the 8th day of March 2024, I served a true and correct copy of the

foregoing **Response** upon counsel of record by electronic filing.


 */s/ Amanda R. Hudson*
UNITED STATES ATTORNEY'S OFFICE