Jonathan C. Coppom
Wyoming State Bar No. 7-5548
Assistant United States Attorney
District of Wyoming
P.O. Box 668
Cheyenne, WY 82003
(307) 772-2124
jonathan.coppom@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | |
| v. | Criminal No. 23-CR-153-S |
| **STEVEN SHOBERT,** | |
| Defendant. | |

**RESPONSE TO MOTION TO SUPPRESS EVIDENCE**

The United States, through Assistant United States Attorney Jonathan C. Coppom, submits its response opposing Steven Shobert's Motion to Suppress Evidence. (ECF No. 27.)

**I.      Factual Background.**

On July 27, 2023, Shobert voluntarily appeared at the residence of an off-duty officer, A.C. He began discussing a missing persons' case. He explained he had a theory of who had made the person go missing. A.C. smelled the odor of alcohol on him. Shobert shared, "You can probably tell I've had a couple of drinks." A.C. was troubled because he had children in the home; he directed them to go upstairs. A.C. also observed a holster on Shobert's hip. Shobert, apparently seeing A.C. look at the holster, said that A.C. needed to see his new revolver. He pulled out the

firearm, the barrel directed towards A.C.'s house, and handed it to A.C. A.C. examined it for a moment before handing it back to Shobert. Shobert took about a minute to re-holster it.

In the meantime, A.C. managed to text his wife. He directed her to call the police. Before they arrived, Shobert discussed "taking matters into his own hands" regarding the missing person. He said he could probably manage a 400- to 500-yard shot with his sniper rifle to take care of the person he felt was responsible for the missing person. A.C. continued speaking with Shobert, trying to keep him calm.

Eventually, officers arrived on-scene. Washakie County Sheriff's Deputy Scheerer made contact with Shobert. Shobert apparently stated he voluntarily wanted to speak with Deputy Scheerer. Deputy Scheerer asked what brought Shobert to A.C.'s home; he responded he had some information he voluntarily wanted to relay to A.C. about the missing person case. Shobert was asked to keep his hands away from his waistline, where his firearm was holstered, and later another deputy as able to retrieve the firearm from him with Shobert's voluntary consent. They determined that Shobert had voluntarily driven to A.C.'s house. After standard sobriety tests and interacting with him, law enforcement arrested Shobert for driving under the influence of alcohol.

Shobert appeared before a circuit court judge. The judge entered conditions of bond. The conditions included that Shobert had to post $1,000. It also required him to relinquish his firearms pending further proceedings. On July 28, Shobert was found in some sort of medical trouble. He was transported by ambulance to the local hospital. Local law enforcement approached Shobert in the hospital and reminded him that to be released on bond he would need to relinquish his firearms. Medical records document that Shobert was conscious, speaking clearly, and generally sound. He consented to law enforcement to search his home. When that occurred, law enforcement found a

Glock pistol fit with a Glock switch, turning it automatic, three AR-15 machinegun devices, and a short-barreled rifle. That resulted in the instant charges against him.

**II.      Analysis.**

Shobert now alleges, after voluntarily going to an off-duty deputy's home, voluntarily purchasing machinegun devices, voluntarily equipping a Glock with a Glock switch, that he did not voluntarily give consent to search his home. Despite all the voluntary actions leading to the instant charges, Shobert he involuntarily gave consent to search his home.

The question of whether a defendant has voluntarily consented to a search is a question of fact for the district court. *United States v. Miles*, 16 Fed. App'x 845, 848 (10th Cir. 2001). Courts evaluate a number of factors to determine if consent is freely given. *See*, *e.g.*, *United States v. Zapata*, 997 F.2d 751, 756-57 (1993). They include "the location of the encounter, particularly where the defendant is 'in an open public place where he [is] within the view of persons other than law enforcement officers; whether the officers 'touch or phyiscally restrain' the defendant; whether the officers are uniformed or in plain clothes; whether their weapons are displayed, the number, demeanor, and tone of voice of the officers; whether and for long the officers retain the defendant's personal effects such as tickets or identification; and whether or not they have specifically 'advised defendant at any time that he had the right to terminate the encounter or refuse consent.'" Id.

Here, Shobert's motion will undoubtedly require an evidentiary hearing. He asserts he was coerced into providing consent for law enforcement to retrieve his firearms. But notably, Shobert never asserts he did not, in fact, want to be released on bond. He does not assert he did not want to be released from custody. And the events leading to him grant consent for a search of his home occurred one day after his extreme inebriation. The medical records document he was speaking clearly and was comprehending and responding appropriately to what others were saying to him.

The government respectfully asserts it was not coercion that led to Shobert providing consent; it was a desire to no longer be in custody. Consent during custody was not a product of inappropriate law enforcement conduct, it was a product of Shobert's voluntary actions.

Therefore, the United States respectfully asks the Court to deny Shobert's motion.

Respectfully submitted this 8th day of March 2024.

                                                                    NICHOLAS VASSALLO
                                                                    United States Attorney

                    By:     */s/ Jonathan C. Coppom*
                             JONATHAN C. COPPOM
                             Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

This is to certify that on the 8th day of March 2024, I served a true and correct copy of the foregoing **Response** upon counsel of record by electronic filing.

                                                 */s/ Amanda R. Hudson*
                                                 UNITED STATES ATTORNEY'S OFFICE